UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

B.M. by and through his next friend M.F.,
and M.F., individually and as parent and
legal guardian of B.M.,

        Plaintiffs,

vs.                               Case No. 3:13-cv-13-J-12JBT

DARLENA THOMPSON, individually, and
the DUVAL COUNTY SCHOOL BOARD,

        Defendants.

_____

## ORDER

      **THIS CAUSE** is before the Court on: 1) Defendant Duval County School Board's (DCSB) motion to dismiss (Doc. 4) and Plaintiffs' response in opposition (Doc. 8); and  2) Defendant Darlena Thompson's (Thompson) motion to dismiss (Doc. 11) and Plaintiffs' response in opposition (Doc. 12).  Both Defendants seek dismissal of claims against them pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief.  After setting forth the standard of review to be applied and Plaintiffs' relevant factual allegations, the Court addresses the DCSB's motion to dismiss then that of Thompson.  For the reasons set forth below, the Court will grant in part and deny in part both motions.

**Standard of Review**

      To state a claim for relief, Fed.R.Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  For purposes of deciding whether

dismissal for failure to state a claim is required under Fed.R.Civ.P.12(b)(6), the Court accepts the allegations in Plaintiffs' Complaint and Demand for Jury Trial (Complaint, Doc. 1) as true and views the facts in the light most favorable to them. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)(internal quotation marks omitted).

   In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court addressed the standard of pleading required to avoid dismissal under Fed.R.Civ.P.12(b)(6). The Supreme Court noted that while a complaint need not contain detailed factual allegations, a plaintiff is required to provide more than labels and conclusions and a formulaic recitation of the elements of a cause of action, and must make factual allegations that create more than a suspicion of a legally cognizable cause of action, on the assumption that all of the allegations in the complaint are true, even if doubtful in fact. Twombly, 550 U.S at 555 (citations omitted). A complaint must allege enough facts, taken as true, to raise the reasonable expectation that discovery will reveal evidence sufficient to establish the elements of the cause of action. Id. at 556. The factual allegations must move beyond the mere possibility of the existence of a cause of action to establish plausibility of entitlement to relief. Id. at 557-558. The Supreme Court expressly rejected the often used standard derived from Conley v. Gibson, 355 U.S. 41 (1957), that a plaintiff states a cause

of action if the allegations raise the possibility that the plaintiff could establish some set of facts to support recovery. Id. at 561-563.

The Supreme Court reiterated Twombly's requirement that to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim fo relief that is plausible on its face," and further elaborated on the "plausibility standard," in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citation omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. (internal quotations and citations omitted). The Iqbal Court further explained that a court need not accept legal conclusions couched as factual recitations as true and that determining whether a complaint states a plausible claim for relief is a context-specific task requiring the reviewing court to draw on its judicial experience and common sense. Id. at 678-79.

The Supreme Court suggests a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679). The Court applies these standards to the allegations in Plaintiffs' Complaint.

**Factual Allegations**

The following relevant facts are alleged in Plaintiffs' Complaint, which the Court accepts as true for purposes of ruling on the motions to dismiss. Plaintiff B.M.(B.M), a disabled minor child, and Plaintiff, M.F., his next friend, parent and guardian, seek recovery of monetary damages (actual, compensatory, and punitive), attorney's fees and costs resulting from an incident on March 18, 2011. Complaint, Doc. 1 at 1. On that date, Thompson, B.M.'s teacher, snatched a pencil out of his hand and threw it at him during class, striking him in the head. Id. at ¶ 1. B.M. was 13 years old at the time of this incident, with Down syndrome, an IQ of approximately 40, a developmental level of a four (4) year old, and emotional skill functioning of a one year, five month old child. Id. at ¶¶ 15-18.

Plaintiffs describe Thompson's actions, as done "without provocation," an "attack" or "an unprovoked attack," on B.M. Id. at ¶¶ 1, 31, 44, 53, 101, and 117. They also contend her actions amounted to battery or intentional infliction of emotional distress. Id. at ¶ 54. The incident was captured on video by a paraprofessional who worked in Thompson's classroom and who suspected that Thompson was mistreating students when no other adult was present. Id. at ¶¶ 27-28.

At the time he was struck, B.M. immediately opened his eyes wide and repeatedly rolled his head left and right, evidencing the immediate trauma of the incident. Id. at ¶ 32. Plaintiffs maintain the incident caused B.M. to experience severe mental and physical problems consistent with Posttraumatic Stress Disorder.[1] Id. at ¶¶ 44 and 53.

---

[1]    The Complaint mentions specifically that B.M. began having trouble sleeping and with anxiety, began throwing things at his three (3) year old sister, began hitting himself in the head and calling out Thompson's name, would wake up in the middle of the night and ask if he had to go to school,

(continued...)

Plaintiffs further allege that DCSB had actual or constructive notice of instances of abusive conduct by Thompson prior to the incident with B.M., and actual or constructive notice that such conduct did and could cause emotional, psychological or physical harm to special needs students such as B.M.[2] Id. at ¶ 55. Plaintiffs cite to the knowledge of prior incidents of Thompson's abusive conduct, as well as to the suspension without pay of at least nine (9) other special needs teachers in the months immediately before and after the incident with B.M., as indicative of DCSB's pattern, practice, or policy of deliberately indifferent supervision, discipline and retention of teachers of special needs students, which breached the duty to provide a safe educational environment and resulted in injury to B.M. Id. at ¶¶ 71-72.

Based upon these allegations, Plaintiffs assert five (5) causes of action against DCSB: 1) a civil rights claim pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiffs' Fourteenth Amendment substantive due process liberty interest "to be free from unnecessary and unreasonable force or intentional, reckless, or deliberately indifferent or oppressive conduct that causes emotional or psychological harm" (§ 1983 claim, Count I); 2) intentional discrimination against B.M. based upon his disability, in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (§ 504 claim, Count II); 3) deprivation of B.M.'s right to a free and adequate public education in violation of the Individuals with Disabilities in Education Act,

---

[1](...continued)
stopped riding the bus to school, had to take prescription medications, had to receive additional treatment as a result of this incident, and will nee future treatment to recover from the abuse. Complaint, Doc. 1 at ¶¶ 44-52.

[2]     For example, Plaintiffs cite to a misconduct report which stated that Thompson had twisted a student's arm and for which she received a written reprimand, as well as the fact that she had been directed to undertake additional training because of persistent difficulties in managing her classroom. Complaint, Doc. 1 at ¶¶ 58-59. Plaintiffs also allege that several other parents had reported concerns to school officials about Thompson's potentially abusive behavior. Id. at ¶ 86.

20 U.S.C. §§ 1400 et seq., (IDEA claim, Count III); 4) battery (Count VII); and 5) negligence (Count VIII) . The Complaint contains three (3) similar claims against Thompson: 1) a § 1983 claim (Count IV); 2) a § 504 claim (Count V); and 3) an IDEA claim (Count VI). The Court now addresses each Defendants' motion to dismiss in turn.

**Defendant DCSB's Motion to Dismiss**

DCSB seeks dismissal of Plaintiffs' § 1983, § 504, and IDEA claims (Counts I-III). Plaintiffs' state law battery and negligence claims (Counts VII and VIII) are not at issue in its motion to dismiss.

§ 1983 Claim

DCSB seeks dismissal or partial dismissal of the § 1983 claim on three bases. DCSB's first ground for dismissal is that Plaintiffs' factual allegations do not state a Fourteenth Amendment substantive due process violation as a matter of law. Its position is that Thompson's act of throwing a pencil at B.M. and the resulting psychological injury do not rise to the level of behavior that shocks the conscience so as to give rise to a cognizable claim that B.M.'s constitutional rights were violated.

In T.W. v. School Bd. of Seminole County, Fla., affirming summary judgment in favor of a school board and teacher alleged to have violated a disabled student's constitutional right to be free from excessive corporal punishment, the Eleventh Circuit discussed the nature of a § 1983 substantive due process claim.

> The Due Process Clause protects individuals against arbitrary exercises of government power, but "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 845–46, (1998) (quoting Collins v. City of Harker Heights, 503 U.S.

115, 129, (1992)). To be arbitrary in the constitutional sense, an executive abuse of power must "shock[ ] the conscience." Id. at 846. "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." Id. at 848. The Due Process Clause does not "impos[e] liability whenever someone cloaked with state authority causes harm." Id. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849. Both this Court and the Supreme Court have "said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." Neal ex rel. Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1074 (11th Cir.2000); see also Lewis, 523 U.S. at 848. Nevertheless, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment ... may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." Neal, 229 F.3d at 1075.

610 F.3d 588, 598 (11ᵗʰ Cir. 2010)(parallel citations omitted).

In that case, the Eleventh Circuit also discussed the fact that it had not yet articulated the analysis applicable when a school official's use of force does not constitute corporal punishment, as Plaintiffs allege in this case,[3] but acknowledged that such use of force would have to be "conscience-shocking."[4]   T.W., 610 F.3d at 599.  So while a precise analysis is not dictated by binding precedent, the analysis utilized in cases involving corporal punishment may guide the Court in this case.

---

[3]     The Court discusses more fully below, in addressing Thompson's claim of qualified immunity, the point that Plaintiffs' allegations and the reasonable inferences to be drawn therefrom state their position that the incident between Thompson and B.W. was not intended as a form of corporal punishment or discipline.

[4]     This suggests, as do the cases cited by the parties, that in the context of a teacher's use of force against a student in school, deliberate indifference is not the standard to be applied in determining whether a violation of constitutional rights has occurred giving rise to liability under § 1983. Deliberate indifference is relevant to the determination of whether a governmental entity is liable for a constitutional violation committed by an individual as the Court discusses below in addressing DCSB's second ground for dismissal.

A substantive due process claim involving corporal punishment has both an objective and a subjective component; the punishment or use of force must be obviously excessive as an objective matter, and wielded in circumstances where it was foreseeable that serious bodily injury could result. Id. (citing Neal, 229 F.3d at 1075 and n. 3). To determine whether a use of force is obviously excessive, three factors are particularly relevant: "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." Id. (citing Neal, 229 F.3d at 1075). However, the totality of the circumstances must be considered, which includes a child's disability and the extent to which the disability makes the child more vulnerable to injury. Id. If the use of force is not obviously excessive, the Court need not consider the subjective intent of the school official. Id. at 602-03.

"In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Neal, 229 F.3d at 1076 (citing Metzger v. Osbeck, 841 F.2d 518, 520 (3rd Cir. 1988). The Court will apply these principals to determine whether the non-disciplinary use of force alleged in this case may constitute a substantive due process violation.

Additionally, in T.W., the Eleventh Circuit explained that it "has never considered whether corporal punishment that causes only psychological injuries can amount to a violation of substantive due process," but acknowledged that students "who suffer from severe

developmental disabilities, are particularly vulnerable to psychological harm, and that psychological injuries can be as traumatic, if not more traumatic, than physical injuries." 610 F.3d at 601. After recognizing that plaintiffs have not fared well where psychological damage forms either the sole basis of or is an element of a substantive due process claim, the Eleventh Circuit stated: "but we can imagine a case where an exercise of corporal punishment—even one that causes only psychological injury—"might be so severe that it would amount to torture ...." T.W., 610 F.3d at 601-02 (citations omitted). This means that the fact that a disabled child suffered de minimus or no bodily injury is not necessarily conclusive as to whether the use of force was obviously excessive.

Nevertheless, it is clear that the standard for what constitutes a use of force against a student by a teacher that shocks the conscience is quite high, whether or not it is exerted in a disciplinary context. In T.W., the Eleventh Circuit found that it could not say that the exercises of corporal punishment and force in involved[5] were so "arbitrary and egregious," "so brutal, demeaning and harmful as literally to shock the conscience of the court." 610 F.3d at 602 (citing Neal, 229 F.3d at 1075 (citation omitted)). In determining that the multiple incidents of force at issue in T.W. did not establish a substantive due process violation, the Eleventh Circuit was mindful of the "Supreme Court's mandate to remain vigilant in policing the boundaries separating tort law from constitutional law," and that "the Due Process Clause

---

[5]    The evidence established that in five (5) separate incidents T.W.'s teacher: 1) put T.W. with his face on the ground, straddled him and pulled his arms behind his back for no more than five minutes; 2) forced him to the floor and puled his right leg up against the back of his left leg for two to three minutes; 3) pulled him up from his chair, forced him against the table with his arms behind his back and placed her weight against his back to hold him in place for about three minutes; 4) pinned both hands behind his back as she walked him to a cool down room; and 5) tripped him when he exited the cool down room. T.W., 610 at 595-96. The Court determined that the first four incidents were disciplinary in nature, but the last one was not. Id. at 598-99.

imposes liability only in 'extraordinary circumstances.'" 610 F.3d at 602 (citing <u>Nix v. Franklin County Sch. Dist.</u>, 311 F.3d 1373, 1379 (11th Cir.2002)).

So to determine whether the use of force alleged by Plaintiffs plausibly states a § 1983 violation, the Court must consider all relevant circumstances, including the need for the utilization of the force, the relationship between that need and amount of force utilized, the nature and extent of the resulting injury, the subjective intent of the state actor, and the fact that the injured party is a disabled child. Plaintiffs have alleged that Thompson lodged an unprovoked attack on B.M. amounting to battery or intentional infliction of emotional distress, when there was no need for any use of force at all, that the resulting psychological injury to B.M. was severe as evidenced by his immediate reaction to being hit with the pencil and subsequent experience of symptoms of Posttraumatic Stress Disorder, and that Thompson knew or should have known the severe harm that such action could cause because of the nature of the child's disability. The Court is of the opinion that these allegations state a plausible claim for relief in that they raise a reasonable expectation that discovery will reveal evidence sufficient to establish a violation of B.M.'s constitutional rights.

The parties have cited no binding case authority that dictates the conclusion that Plaintiffs allegations cannot establish a substantive due process violation as a matter of law. The Court is mindful that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." <u>Lewis</u>, 523 U.S. at 849. This case presents a difficult question, given that case law illustrates that only egregious conduct rises to a level to shock the conscience, but the answer requires consideration of all relevant circumstances. The Court is of the opinion that Plaintiffs'

allegations are sufficient to merit the development of an evidentiary record to permit full consideration of all relevant facts before a final conclusion may be reached as to whether Defendants' actions violated B.M.'s substantive due process rights. Therefore, the Court finds that dismissal is not warranted on DCBS's first ground.

DCSB's second argument for dismissal of the § 1983 claim is that even if Plaintiffs have stated a claim for a substantive due process violation, their allegations do not establish an that an official policy or practice was the cause of the constitutional violation or that DCSB was deliberately indifferent to the need for training and/or supervision of special needs teachers, including Thompson. For the following reasons, the Court finds that the allegations in Plaintiffs' Complaint are sufficient to state a plausible claim for DCSB's liability.

The Supreme Court held in Monell v. Dep't of Social Services, 436 U.S. 658 (1978), that under § 1983, government entities cannot be held liable for the actions of employees under theories of respondeat superior or vicarious liability; it is the action of the government entity itself that must cause the constitutional violation at issue. See also, e.g., Cook v. Sheriff of Monroe County, Fla., 402 F.3d 1093, 1116 (11th Cir. 2004); Samples v. City of Atlanta, 846 F.2d 1328, 1333 (11th Cir.1988). Municipalities and government agencies are subject to § 1983 liability only when execution of a government policy or custom causes the injury (the violation of a right protected by constitution or statute). McDowell v. Brown, 392 F.3d 1293, 1289 (citing City of Canton v. Harris, 489 U.S. 378 (1989)). If the policy or custom is a failure to train or supervise, a plaintiff must establish that such failure amounted to deliberate indifference to the rights of persons with whom the employees come into contact. Id. at 1289, 1291.

The Court looks only at the allegations of the Complaint and the reasonable inferences to be drawn therefrom to determine whether Plaintiffs have sufficiently asserted a plausible claim that DCSB is liable under § 1983 because of a policy or practice amounting to deliberate indifference. The Court does not attempt to evaluate whether Plaintiffs ultimately will be able to prove it.

Here, Plaintiffs have alleged that DCSB knew of other instances of abusive behavior by Thompson, even after she was sent for training, and that other parents expressed concern about her classroom behavior, yet still failed to adequately supervise or train her, directly resulting in the injuries to B.M. Plaintiffs further claim that at least nine (9) teachers at B.M.'s school had been suspended without pay between January 10 and May 3, 2011, (a time period surrounding the March 18, 2011, incident at issue), for professional misconduct, noncompliance with federal, state or local requirements, or unsatisfactory attendance. The Court finds these allegations sufficient to state a claim that DCSB's custom or policy of deliberately indifferent supervision and/or training of its teachers of special needs students caused B.M.'s injuries. Therefore, DCSB is not entitled to dismissal on this second ground.

Finally, the Court agrees with DCSB's third ground for partial dismissal, that Plaintiffs' allegations do not plausibly support the conclusion that Thompson was a final policy maker for DCSB such that it would be liable for her actions on that basis. Plaintiffs have alleged that Thompson was B.M.'s teacher, that she was responsible for implementing his special needs education requirements under applicable law, that she had other incidents of inappropriate behavior towards her special needs students, and that she threw a pencil at B.M. without provocation causing him injury. While her actions may have led directly to B.M.'s injuries,

these allegations cannot support a conclusion that Thompson's actions represented an official policy or custom regarding the training or supervision of special needs teachers warranting imposition of liability.[6]  The Court will grant partial dismissal as to this theory of liability under § 1983.

§ 504 and IDEA Claims

DCSB asserts that Plaintiffs' § 504 and IDEA claims must be dismissed because they have failed to exhaust administrative remedies before bringing suit.  Plaintiffs maintain that exhaustion is not required in this case because pursuit of administrative remedies would be futile and/or inadequate in that they seek money damages and Thompson is no longer employed at the school.

The Eleventh Circuit has explained the IDEA's exhaustion requirement:[7]

> The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities...." Key reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.... The exhaustion requirement, however, is not jurisdictional and therefore "is not to be applied inflexibly...." The exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate.

---

[6]     Although Plaintiffs allege that Thompson was a final policy maker in that her decisions were not immediately or effectively reviewable (Complaint, Doc. 1 at ¶ 85), they also assert that she was an employee of DCSB acting in conformity with its customs, policies and/or practices (Complaint, Doc. 1 at ¶¶ 12-13).  In responding to DCSB's motion to dismiss, Plaintiffs have not addressed this issue, so it appears they do not intend to pursue this theory of municipal liability.

[7]     Exhaustion also is required for claims brought pursuant to § 504.  See M.T.V. v. DeKalb County Sch. Dist.., 446 F.3d 1153, 1157-58 (11th Cir. 2006).

N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378-79 (11th Cir. 1996)(citations omitted).

"The burden of demonstrating futility is on the party seeking exemption from the exhaustion

requirement."   M.T.V. v. DeKalb County Sch. Dist.., 446 F.3d 1153, 1159 (11th Cir.

2006)(citation omitted).

     In reviewing the cases cited by the parties, it is notable that the Eleventh Circuit has

been fairly strict in requiring administrative exhaustion of § 504 and IDEA claims.   For

example, in N.B. it found that exhaustion is required under the IDEA even though the student

had left the school system and had sought only compensatory damages which the school

district lacked authority to grant. N.B., 84 F.3d at 1379. The Court relied largely on the factor

of preventing deliberate disregard and circumvention of established agency procedures,

noting that '[a] procedure that may result in any substantial relief is not futile." Id. The Court,

however, did not discuss what substantial relief the administrative proceeding would provide.

     In that case, the Eleventh Circuit opined that the fact that the plaintiff sought money

damages under § 1983 for violations of the IDEA (in addition to the money damages sought

in an IDEA claim) did not render exhaustion futile or inadequate because in seeking to file a

suit to protect the rights of handicapped children that could have been filed under the IDEA,

they were required first to exhaust administrative remedies to the same extent as if the suit

had been filed under the IDEA. Id.

     In addition, the Eleventh Circuit has held that  "any student who wants 'relief that is

available' under the IDEA must use the IDEA's administrative system even if he invokes a

different statute." Babicz v. Sch. Bd. of Broward County, 135 F.3d 1420, 1422 n.10 (11th cir.

1998)(citation omitted).   An important basis for subjecting claims to IDEA's exhaustion

requirement is if the claim is related in any way to the enforcement of the right to receive a free and adequate public education, such as claims related to the identification, evaluation or placement of the child. See, e.g., Charlie F. v. Bd. of Educ. of Skokie Sch. Dist., 98 F.3d 989, 991-92 (7th Cir. 1996)(The relief available under IDEA does not depend on what the aggrieved party wants and educational professionals should have the first opportunity to overcome the consequences of educational shortfalls.); M.T.V., 446 F.3d at 1158-59.

Plaintiffs have alleged that Thompson's actions intentionally discriminated against B.M. on the basis of his handicap in violation of § 504, and that DCSB failed to reasonably accommodate him by protecting him from exposure to her abusive behavior when they had notice of complaints of her misconduct. They also assert that DCSB was deliberately indifferent to Thompson's history and pattern of abusive conduct, resulting in the incident with B.M., which interfered with his right to a free and adequate public education in violation of the IDEA. The Court is of the opinion that these claims may reasonably be characterized as having to do with the educational placement of the child, which falls within the ambit of claims for which the Eleventh Circuit has required exhaustion.

Moreover, although the Complaint alleges that Thompson is no longer employed with DCSB, it is not clear whether B.M. still attends the same school or any school in the system administered by DCSB. Even though Plaintiffs seek only monetary damages, it also is unclear whether administrative procedures could result in provision of any remedies, such as counseling to assist B.M. in recovering from the trauma of the incident. It is Plaintiffs' burden to establish that exhaustion would be futile or inadequate. The Court finds the Plaintiffs have

not met that burden and so will dismiss the § 504 (Count II) and IDEA (Count III) claims for failure to exhaust administrative remedies.

**Defendant Thompson's Motion to Dismiss**

Defendant Thompson seeks dismissal of all three claims against her brought pursuant to § 1983 (Count IV), § 504 (Count V), and the IDEA (Count VI). The Court addresses her arguments as to each claim.

§ 1983 Claim

With regard to Plaintiffs' § 1983 claim, Thompson claims that at all times she was acting within the scope of her discretionary authority as a teacher and that she is immune from suit under the doctrine of qualified immunity because the facts alleged in the Complaint are insufficient to establish that a judicially cognizable constitutional right has been violated. Simply put, Thompson maintains that in the context of maintaining classroom discipline, the act of throwing a pencil at a disabled student, with no resulting physical injury, cannot amount to a substantive due process violation as a matter of law.

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quoting Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir.2001)) (internal quotation marks omitted). Qualified immunity allows government employees to carry out their discretionary duties without fear of litigation, "protecting from suit

all but the plainly incompetent or one who is knowingly violating the federal law." Id. at 1194

(citation and internal quotation marks omitted).

In order to merit qualified immunity protection from suit, a defendant must first

demonstrate that they were engaged in a discretionary job duty. Holloman v. Harland, 370

F.3d 1252, 1264 (11th Cir.2004). While the Holloman court addressed the issue of qualified

immunity in the context of a motion for summary judgment, it sets forth the law applicable in

considering Thompson's motion to dismiss.

> To even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a "discretionary function" when he performed the acts of which the plaintiff complains. Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982) (holding that qualified immunity extends to "government officials performing discretionary functions"). It is the burden of the governmental official to make this showing. Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (2003) ("Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." (emphasis added)). A defendant unable to meet this burden may not receive summary judgment on qualified immunity grounds. Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir.2003) ("If the defendants were not acting within their discretionary authority, they are ineligible for the benefit of qualified immunity."); see also Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002).

Holloman, 370 F.3d at 1254-65 (parallel citations omitted).

To determine whether an employee was engaged in a discretionary function, the Court

looks at "whether the government employee was (a) performing a legitimate job-related

function (that is, pursuing a job-related goal), (b) through means that were within his power

to utilize. Id. at 1266-67 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n. 17

(11th Cir.1994) ("A government official acts within his or her discretionary authority if objective

circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority."))

In this case, the Court cannot determine at this juncture whether Thompson is entitled to qualified immunity because the Complaint alleges precisely that she was not engaged in a discretionary function.   Plaintiffs assert that Thompson's actions were an "attack" or "unprovoked attack" on B.M.  The reasonable inference to be drawn is that Plaintiffs maintain that Thompson was not acting withing the scope of her discretionary authority as a teacher attempting to disciple a student or maintain classroom decorum when she threw a pencil at B.M.[8] The Court must accept Plaintiffs' factual allegations as true in considering thompson's motion to dismiss, and cannot resolve this apparent disputed factual issue of whether or not Thompson was acting within her discretionary authority during her interaction with B.M.  As a result, Thompson's motion to dismiss must be denied as to the § 1983 claim.[9]

---

[8]    In describing the video recording of the incident, the Complaint states that Thompson snatched the pencil from B.M.'s outstretched hand and threw it at him "without provocation, striking him in the head" and that Thompson claimed another student, not B.M., had misbehaved. Doc. 1 at ¶¶31, 35.  The Complaint also notes that the report of the school investigator states that in his review of the video he was struck by how well-behaved all of the students were throughout the duration of the video, with the exception of one student who laughed when Thompson threw the pencil. Id. at ¶ 41.

[9]    Only after it is clear that the government official was engaged in a discretionary function does the burden shift to the plaintiff to show that the defendant is not entitled to qualified immunity by satisfying a two-prong test: 1) demonstrate the violation of a constitutional right; and 2) that this right was clearly established at the time of the violation.  Saucier v. Katz, 533 U.S. 194, 200 (2001); Wilson v. Layne, 526 U.S. 603,609 (1999); Holloman, 370 F.3d at 1264.  In ruling on DCSB's motion to dismiss above, the Court has determined that the Complaint states a claim for the violation of a constitutional right.  Because the Court does not  reach the merits of Thompson's qualified immunity defense, it is unnecessary to determine whether that right was clearly established.

§ 504 and IDEA Claims

Additionally, Thompson argues that the § 504 claim against her for intentional discrimination against B.M. based upon his disability and the IDEA claim for deprivation of B.M.'s right to a free and adequate public education must be dismissed because the Rehabilitation Act and the IDEA, like the Americans with Disabilities Act (ADA), provide for liability for employers, not individuals. See, e.g., A.B. v. Seminole County Sch. Bd., No. 6:05CV802ORL31KRS, 2005 WL 2105961 at *8 (M.D.Fla. Aug. 31, 2005). Plaintiffs concede that a teacher cannot be individually liable under the IDEA, so Thompson's motion to dismiss is due to be granted as to that claim (Count VI). See Doc. 12 at 16. They argue however that Thompson may be held individually liable for violation of § 504 as a secondary recipient of federal financial assistance.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The Rehabilitation Act does not define "receiving Federal financial assistance" or "recipient," but the United States Supreme Court has made clear that mere beneficiaries or incidental beneficiaries of federal aid are not subject to statutory coverage. See U.S. Dep't of Transportation v. Paralyzed Veterans of America, 447 U.S. 597, 603-610 (1986). For purposes of implementing the Rehabilitation Act, the Department of Justice has defined a "recipient" as:

> any State or its political subdivision, any instrumentality of a State or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee

of a recipient, but excluding the ultimate beneficiary of the assistance.

28 C.F.R. § 41.3(d) (1994) (emphasis added).

In support of the contention that Thompson is a secondary recipient of federal funds individually liable under § 504 of the Rehabilitation Act, Plaintiffs cite two (2) cases. The first is an unpublished opinion from the Southern District of Florida finding that a trust that received monies from the City of Miami, which was the direct recipient of Rehabilitation Act funds, could be held liable as a secondary recipient. See Lundstedt v. City of Miami, No. 1995 WL 852443 at *18 (S.D.Fla. 1995). The second is a District of Massachusetts case finding that the president of Boston University was personally liable under the Rehabilitation Act because he was in a position to accept or reject federal funding for a program or activity. See Guckenberger v. Boston Univ., 957 F.Supp. 306, 323 (D.Mass. 1997).

These cases do not persuade the Court that Thompson, as an employee of DCSB being paid as a teacher, is anything other than a mere beneficiary or an incidental beneficiary of federal funds. Plaintiffs have provided no basis for the Court to find that her position with DCSB as a teacher is akin to a successor, assignee or transferee with regard to the federal funds received by DCSB, such that individual liability should attach. The Court t therefore will grant her motion to dismiss as to the § 504 claim (Count V).[10]

_____

[10]     Because the Court will dismiss the IDEA and § 504 claims against her, the Court need not address Thompson's argument that Plaintiffs' § 1983 claim may not be maintained in lieu of or in addition to § 504 or IDEA claims.  DCSB did not raise this issue. Dismissal likely would not be appropriate on that basis in this case in any event because Plaintiffs' § 1983 claim is based upon a violation of Fourteenth Amendment substantive due process rights, not violation of the IDEA or § 504 . See, e.g., Holbrook v. City of Alpharetta, Georgia, 112 F. 3d 1522, 1531 (11th Cir. 1997)("[A] plaintiff may not maintain a section 1983 cause of action in lieu of-or in addition to- a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA."); Lewellyn v. Sarasota County Sch. Bd., No. 8:07-cv-1712-T-33TGW,  2009 WL 5214983 at *13 n. 10, (M.D.Fla. Dec. 29, 2009)("[A] section 1983 claim cannot be based on an alleged violation of

(continued...)

Accordingly, it is hereby **ORDERED**:

1.      Defendant Duval County School Board's motion to dismiss (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**.  It is granted as to Plaintiffs' § 504 (Count II) and IDEA (Count III) claims, which are dismissed for failure to exhaust administrative remedies.  With regard to the § 1983 claim (Count I), it is granted as to the theory of liability that Defendant Darlena Thompson was a final policy maker, and otherwise is denied.

2.      Defendant Darlena Thompson's motion to dismiss (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**.  It is granted as to Plaintiffs' § 504 claim (Count V) and IDEA claim (Count VI) and these claims are dismissed with prejudice, and is denied as to the § 1983 claim (Count IV).

3.      Defendants shall have until **September** _13_, **2013** file their Answers to the Plaintiffs' Complaint (Doc. 1).

**DONE AND ORDERED** in Jacksonville, Florida, this _27_ day of August, 2013.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:  Counsel of Record
Bryan E. DeMaggio, Esq., Counsel for Plaintiffs
Elizabeth Louise White, Counsel for Plaintiffs
Matther R. Kachergus, Esq., Counsel for Plaintiffs
William J. Sheppard, Counsel for Plaintiffs
Sally H. Setzer, Counsel for Defendant Darlena Thompson
Rita Marie Mairs, Counsel for Defendant Duval County School Board
Stephen J. Powell, Esq. Counsel for Duval County School Board

---

[10](...continued)
the IDEA, the ADA, or Section 504 of the Rehabilitation Act.").